UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. MANNING,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | No. 2:19-cv-00494 TLN AC PS<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). The last remaining defendant in this case, United States of America, has moved for summary judgment. ECF No. 70. Plaintiff filed an opposition to the motion (ECF No. 71) and a reply to the motion (ECF No. 72). Defendant replied (ECF No. 76), and the matter was heard on the papers. ECF No. 75. For the reasons explained below, defendant's motion should be GRANTED.

**I.     Complaint and Procedural Background**

Plaintiff Anthony L. Manning is a former active duty member of the United States Navy and is now a military veteran. ECF No. 6 at 1 (Second Amended Complaint). Plaintiff states that the United States Department of Veterans Affairs ("USVA") received his Federal Tort Claims Act ("FTCA") notice on August 27, 2018 and responded with a denial on September 25, 2018. Id. Plaintiff filed suit on March 20, 2019. Id. at 2; ECF No. 1. Plaintiff states that he is suing the USVA for "two counts of medical negligence." ECF No. 6 at 2.

1    Plaintiff alleges he was diagnosed with Post Traumatic Stress Disorder ("PTSD") and
2    received treatment from Dr. Amy Fuglei, a medical doctor employed by the USVA. Id. at 2. Dr.
3    Fuglei prescribed plaintiff an anxiety medication, Propranolol HCL, although an evaluation from
4    a private specialist in PTSD, Dr. John Issacs, stated that plaintiff had depression. Id. The
5    medical evaluation of plaintiff's depression was submitted to the USVA, but the USVA failed to
6    properly treat it and the illness worsened. Id. Because of this, plaintiff had difficulty sustaining
7    gainful employment. Id. Plaintiff asserts that he should have been treated for PTSD with
8    depression and anxiety, and because he was only treated for anxiety, he received a lower
9    compensation rating. This incident occurred on or around April 9, 2017. Id.

10   The second incident of medical negligence took place on December 7, 2017. Id. Plaintiff
11   was diagnosed with sleep apnea caused by burn pit exposure, which occurs when military
12   personnel deployed in Iraq or Afghanistan breathe in toxins from burning trash, waste, chemicals
13   and other materials. Id. at 3. Plaintiff requested to have his lungs and other organs examined by
14   a USVA pulmonary specialist, but none of the specialists have responded to plaintiff's request.
15   Id. On November 22, 2018, plaintiff was hospitalized at Service De Sante Militarire Hospital in
16   D' Antsiranana, Madagascar. Id. Plaintiff had increased Aspartate Aminotransferase ("AST"),
17   which is a cardiovascular disease associated with poor respiratory health. Id. Plaintiff alleges
18   that because he was not given proper treatment for sleep apnea, death is more likely to occur
19   sooner than if treatment from a pulmonary specialist were provided. Id. Plaintiff filed a claim for
20   damage, injury, or death to the USVA stating as the basis for his claim:

> The US Department of Veterans Affairs did not allow me to be seen by a pulmonary specialist, even though it was documented by the VA and DoD that I have exposure to burn pits in Afghanistan that causes respiratory issues. The VA never responded to my doctor's referral, though I tried to contact them several times. Now I have cardiovascular disease, which could have been prevented if I was diagnosed by a pulmonary specialist earlier.

25   ECF No. 23 at 15. This claim was submitted August 22, 2018. Id.
26   In the operative Second Amended Complaint, plaintiff asserted one count of medical
27   negligence for the treatment of his PTSD, seeking $1,037,193.64 in damages resulting from lost
28   wages from jobs plaintiff was forced to voluntarily quit due to his mental illness, as well as the

2

future treatment of his PTSD.  Plaintiff asserted a second count of medical negligence for the denial of medical treatment for his sleep apnea, seeking $3,951,297.90 in damages.  Plaintiff's claims related to sleep apnea have been dismissed, and the United States of America was substituted in as the sole defendant in this case.  ECF Nos. 29, 33.  Defendant now asserts it is "entitled to summary judgment on plaintiff Anthony Manning's sole remaining claim for medical malpractice because, under the applicable law, Manning bears the burden of proving by expert testimony a breach of the applicable professional standard of care as well as causation."  ECF No. 70 at 1.

## II.     Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### III. Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence. Defendant's statement of undisputed facts is located at ECF No. 70-2, and is supported by the declarations of Philip A. Scarborough (ECF No. 70-2), Amy Fuglei, M.D. (ECF No. 70-6), Blaine Allen King, D.O. (ECF No. 70-9), and John M. Greene, M.D. (ECF No. 70-10), along with several exhibits. Plaintiff submitted a statement of disputed facts challenging three of defendant's assertions and attaching several exhibits. ECF No. 73.

Plaintiff Anthony Manning seeks to recover damages for alleged medical negligence by Veterans Administration staff psychiatrist Amy Fuglei, M.D, in relation to his mental health treatment. ECF No. 6 ¶¶ 2; Decl. of Amy Fuglei, M.D. ("Fuglei Decl.") ¶¶ 2-6. Dr. Fuglei evaluated plaintiff on two occasions in 2016: October 21, 2016 and November 30, 2016. Decl. of Amy Fuglei, M.D. ("Fuglei Decl.") ¶¶ 2-6 & Ex. 1, Ex. 2. Based on her visits with plaintiff, Dr. Fuglei diagnosed plaintiff with anxiety disorder and made a notation in his chart that he had a history of depressive disorder but did not feel depressed. Fuglei Decl. ¶ 3. Dr. Fuglei prescribed plaintiff 10 milligrams of propranolol to be taken daily as needed for anxiety and discussed the possibility of taking a category of antidepressants known as selective serotonin reuptake inhibitors ("SSRI"), but plaintiff declined SSRI medication. Id. at ¶¶ 3-4.

On August 28, 2020, the United States disclosed John Greene, M.D., as an expert witness in psychiatry, along with Dr. Greene's written expert report and its accompanying exhibits. Declaration of Philip A. Scarborough ("Scarborough Decl.") ¶ 2. Dr. Greene and Dr. Fuglei both testified that Dr. Fuglei met the standard of care when treating plaintiff. Decl. of John Greene, M.D. ("Greene Decl.") ¶¶ 4-5 & Ex. 2 at 24-25; Fuglei Decl. ¶ 3-6.

On September 28, 2020, plaintiff made his Rule 26 expert witness disclosures. ECF 68 at 2; see Scarborough Decl. Ex. 1 (Ziyar Dep.) at 6:20-22. In his Rule 26 expert witness disclosure, plaintiff identifies a treating physician, Dr. Latif Ziyar, whose name was misspelled in the disclosure as "Latif Zayir." ECF 68 at 2; see Scarborough Decl. Ex. 1 (Ziyar Dep.) at 6:20-22. Dr. Ziyar has formed no opinions as to whether any physician employed by the VA breached the

standard of care in the treatment provided to plaintiff.  Scarborough Decl. Ex. 1 (Ziyar Dep.) at 15:17-16:8; 21:3-19.  Dr. Ziyar's treatment of Manning did not encompass a review of the medication he was taking.  Scarborough Decl. Ex. 1 (Ziyar Dep.) at 21:6-19.

In his Rule 26 expert witness disclosure, plaintiff identifies a treating physician, Dr. Blaine King, as an expert witness.  ECF 68 at 2.  Dr. King has not concluded that any physician employed by the VA breached the standard of care in the psychiatric treatment provided to Manning.  Decl. of Blaine King ("King Decl.") ¶ 3.  Dr. King concluded that Dr. Fuglei met the standard of care in her treatment of Manning.  King Decl. ¶ 3.  Plaintiff also identified Dr. Fuglei as an expert witness.  ECF No. 68 at 1.  As noted above, Dr. Fuglei concluded she met the standard of care in her treatment of plaintiff.  Fuglei Decl. ¶¶ 3, 6.  Finally, plaintiff identified treating psychologist John Isaacs, PhD, as an expert witness.  ECF No. 68 at 2.  Dr. Isaacs is a psychologist, not a medical doctor, and is not qualified to prescribe medication.  Scarborough Decl. Ex. 2 (Isaacs Dep.) at 8:11-15; 9:6-20.  Dr. Isaacs has formed no opinions regarding the treatment that Dr. Fuglei provided to Manning.  Scarborough Decl. Ex. 2 (Isaacs Dep.) at 13:6-8; 13:19-25.

### IV.    Analysis

Plaintiff's sole cause of action is a negligence claim against the United States.  ECF No. 6.  The case is accordingly governed by the Federal Tort Claims Act ("FTCA"), which "waives the sovereign immunity of the United States for actions in tort" and "vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees."  Jerves v. United States, 966 F.2d 517, 518 (9th Cir. 1992).  Under the FTCA, "[t]he extent of the government's liability is a matter of federal law, albeit determined according to state standards."  Taylor v. United States, 821 F.2d 1428, 1433 (9th Cir. 1987) (citations omitted).  Because all alleged events in this medical malpractice case occurred in California, the California law of medical malpractice provides the substantive standard.

Under California law, a plaintiff alleging medical malpractice "must establish (1) the duty of the professional to use such skill, prudence, and diligence as other members of [her] profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Elcome v. Chin, 110 Cal. App. 4th 310, 317 (2003); see also Silong v. United States, No. 1:06-cv-0474 LJO DLB, 2007 WL 2712100, at *5 (E.D. Cal. Sept. 14, 2007). The "standard of care" against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts. Hanson v. Grode, 76 Cal. App. 4th 601, 606-07 (1999). Indeed, the standard of care presents the basic issue in a malpractice action and can only be proved by expert testimony, unless the conduct required by the particular circumstances is within the common knowledge of the layman. Id.

California medical malpractice law also requires "causation" to be proven through competent expert testimony. Chakalis v. Elevator Sols., Inc., 205 Cal. App. 4th 1557, 1572 (2012) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." (citation and quotation marks omitted)). "California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Hanson, 76 Cal. App. 4th 607. Applying this law in FTCA cases, courts have held that the failure to proffer expert testimony opining on the standard of care as well as causation is fatal to a medical malpractice claim. See Silong, 2007 WL 2712100, at *6-7.

In this case, the treatment of plaintiff's mental health disorder, including the appropriate prescription medication, is beyond the common knowledge of a layperson. Defendant provided an expert, Dr. Greene, who testified that Dr. Fuglei's treatment of plaintiff was within the proper standard of care. Greene Decl. ¶¶ 4-5 & Ex. 2 at 24-25; Fuglei Decl. ¶ 3-6. Plaintiff concedes he has not provided an expert witness to testify to the contrary, instead arguing that "[i]t is not necessary for a plaintiff to have an expert witness, as the evidence provided by the Plaintiff are treatise in the form of medical clinical practice guidelines, journals, pamphlets, periodicals, and etc." ECF No. 17 at 1. Plaintiff is incorrect on this point; the law requires him to produce

conflicting expert testimony for this case to proceed.  Elcome, 110 Cal. App. 4th at 317.  As discussed above, none of the experts deposed or who have submitted declarations in this case have opined that Dr. Fuglei's treatment fell below the standard of care.  Because plaintiff has failed to provide expert testimony stating that Dr. Fuglei's treatment fell below the applicable standard of care, defendant is entitled to summary judgment in its favor.

## V.   Conclusion

Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 70) be GRANTED and that this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: December 9, 2020

_allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE